Randall BARTELS et al., Plaintiffs,

v.

Francis F. BIERNAT et al., Defendants.

No. 75–C–704.

United States District Court,
E. D. Wisconsin.

Feb. 14, 1977.

Kenneth M. Streit, Wisconsin Assn. for Retarded Citizens, Middleton, Wis., Robert H. Blondis, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for plaintiffs.

George E. Rice, Deputy Corp. Counsel, Milwaukee, Wis., for MCTB defendants.

William E. Callahan, Jr., Asst. U. S. Atty., Milwaukee, Wis., Joseph A. Blundon, Asst. Chief Counsel, Dept. of Transp., Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

The complaint in this action was filed on December 2, 1975 .and asks for declaratory and injunctive relief on behalf of mobility handicapped individuals[1] in the Milwaukee metropolitan area. Named as defendants to this action are the individual members of the Milwaukee County Transit Board, the Secretary of United States Department of Transportation and the Administrator of the United States Urban Mass Transportation Administration.

The complaint sets forth four claims for relief: (1) violation of the Urban Mass Transportation Act, 49 U.S.C. §§ 1601 *et seq.,* specifically 49 U.S.C. § 1612(a);[2] (2) violation of The Department of Transportation and Related Agencies Appropriation Act of 1975, Pub.L.No. 93–391, 88 Stat. 768 (1975);[3] (3) violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.,* specifically 29 U.S.C. § 794;[4] and (4) violation of

---

[1]. The class action status of this case has previously been certified by this Court in an order dated December 24, 1975.

[2]. § 1612. *Planning and design of mass transportation facilities to meet special needs of elderly and handicapped.*

 *Congressional declaration of policy*
 (a) It is hereby declared to be the national policy that elderly and handicapped persons have the same right as other persons to utilize mass transportation facilities and services; that special efforts shall be made in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured; and that all Federal programs offering assistance in the field of mass transportation (including the programs under this chapter) should contain provisions implementing this policy.

[3]. This claim was abandoned at oral argument on the motion for a preliminary injunction, when it became apparent that none of the funds appropriated under the Act was or will be used in the capital grant which is the subject of this suit.

[4]. § 794. *Nondiscrimination under Federal grants*

 No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the

the rights secured by the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the Constitution.

Succinctly stated the complaint alleges that the purchase by Milwaukee County of the Milwaukee and Suburban Transit Company, a privately-owned transit system, and a proposed purchase of 100 new passenger buses utilizing federal funds violates existing federal law in that it discriminates against the plaintiff class. The plaintiffs contend that the federal funds were authorized by the federal defendants in the face of an application for the grant which shows that the existing system is inaccessible to the plaintiff class and that no plans exist to make the mass transit system effectively accessible to the mobility handicapped.

The prayer for relief asks that the Court:

Issue a Declaratory Judgment that plaintiffs have the same rights as other persons to utilize public mass transit systems; that plaintiffs shall not be denied the benefits of the Milwaukee County Mass transit system because of their mobility handicaps, that defendants must take affirmative action to assure effective utilization of the Milwaukee County Transit system by mobility handicapped persons, and that defendants violated the rights secured to plaintiffs by 49 U.S.C. § 1612(a), 29 U.S.C. § 794, 42 U.S.C. § 1983, Pub.L.No. 93–391, § 315 (1975), and the Fifth and Fourteenth Amendments to the Constitution of the United States.

Enter a Permanent Injunction enjoining defendant members of the Milwaukee County Transit Board from owning or operating any public mass transit system which does not assure the availability to handicapped persons of mass transportation by this system which they can effectively utilize.

Enter a Permanent Injunction enjoining defendants COLEMAN and PATRICELLI from releasing federal funds to any mass transit system or project within Milwaukee County which fails to assure the availability to handicapped persons of mass transportation by that system which they can effectively utilize.

A preliminary injunction, previously entered in this action, enjoined the defendants from taking any action to accept any bids that were outstanding for the construction of passenger buses, or taking any other action that is intended to or would be reasonably likely to effect binding contracts in that regard.[5] The case is currently before the Court on the federal defendants' motions for judgment on the pleadings and cross motions for summary judgment filed by all parties to the action. An exploration of the factual basis for this action is the appropriate starting point for the resolution of these motions.

Early in 1975, the County of Milwaukee submitted an application for a capital grant to the Urban Mass Transportation Administration (UMTA). The project, which comprised the subject of the application, was the acquisition of the physical operating assets of the Milwaukee and Suburban Transport Corporation and the purchase of 100 new 49–53 passenger transit buses.

The grant was approved by the Department of Transportation, UMTA in June of 1975. The estimated net cost of the project was $21,425,500. Of that amount, 80 percent or $17,140,400 was to be paid with federal funds.[6]

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
Pub.L. 93–112, Title V, § 504, Sept. 26, 1973, 87 Stat. 394.

5. *Bartels v. Biernat,* 405 F.Supp. 1012 (E.D.Wis. 1975).

6. The actual breakdown of the cost and funding is as follows:

Prior to preparing the application for the grant, Milwaukee County undertook a comprehensive study of the transit system and developed the Milwaukee Area Transit Development Program. The report of the program concludes that:

Although the transit system does provide good service for the special priority groups, the system does not provide good service for the handicapped—the ambulatory and the non-ambulatory.

Special service for the handicapped is provided in the private sector as described in Chapter IV. Service is provided by contract with schools and hospitals, while other service is of the demand-response nature.

Service is paid for by the public and private school systems, and by Medicaid. Rates for the demand-response system are expensive with the fare structure based on a city block basis.

It is not possible for the handicapped to use the existing bus fleet, and it would be very expensive to convert any of the present fleet to handle the handicapped.

A subsidy program to help pay for existing service for the non-ambulatory not already covered by a subsidy program would be the simplest to implement and administer.

New and smaller buses which are specially equipped to serve the ambulatory could be purchased, and a demand-responsive system established.

The application submitted by the County to secure the grant recites the facilities available to the elderly and the handicapped. These services are provided by private corporations and non-profit groups that actually own and operate buses or vans, and those that just subsidize the cost of transportation for their clientele. The largest of the providers listed is "Handicabs of Milwaukee." While providing many services to the mobility disabled on a demand-responsive basis, the service appears to be quite expensive with a minimum round trip fare of $8.00.

Prior to delineating the services available in the Milwaukee area to the handicapped, the application recites the major problems involved in transporting the handicapped and sets out alternative methods of solving these problems. After this discussion of some 12 pages, a section headed "Proposed Service to Elderly and Handicapped" states "Milwaukee County has no plans for initiating any radically new transit operation during the early stages of public ownership."

The stated reasons for not initiating new operations was so that in the early stages emphasis could be placed on stabilizing and preserving the existing system while improving the level of service and lowering fares. Earlier sections of the report suggest that before any plan for adding new services for the mobility handicapped can be developed more data on the needs and travel patterns of this segment of the community must be gathered and evaluated. Subsequent to the approval of the grant, Milwaukee County contracted with the Southeastern Wisconsin Regional Planning Commission to undertake a comprehensive study of this topic.

Subsequent to the filing of the complaint in this action, the Seventh Circuit Court of Appeals has ruled that section 504 of the Rehabilitation Act of 1973 does create a private cause of action. *Lloyd v. The Regional Transportation Authority*, 548 F.2d 1277 (1977). The Circuit Court also held in that case that doctrines of exhaustion of administrative remedies and primary juris-

Project Description and Financing - The project consists of the following:

a. The acquisition of the physical assets of the Milwaukee and Suburban Transport Corporation $11,685,728

b. The purchase of 100 new 49-53 passenger diesel, air-conditioned transit buses, less tires and including delivery and conditioning costs  7,100,000

c. The purchase and installation of 105 new twoway voice communication radios, with base station  250,000

d. The purchase of four spare airconditioning compressors and two complete engine cradle assemblies  69,000

e. The payment of grant administration costs  382,094

Subtotal $19,486,822
Contingency  1,948,678
Estimated Gross Project Cost $21,435,500
Deduct Revenue Financing  10,000
ESTIMATED NET PROJECT COST $21,425,500

UMTA Grant $17,140,400
Local Contribution $ 4,285,100

diction do not preclude the Court's jurisdiction.[7] *Id.* at 1287.

▮▮▮▮ The *Lloyd* case dictates that the federal defendants' motions to dismiss for lack of jurisdiction over the subject matter of the action and for failure of the complaint to state a claim upon which relief can be granted should be denied. The Court must therefore address itself to the cross motions for summary judgment.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, states:

No otherwise qualified handicapped individual in the United States, as defined in section 7(6), shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The following undisputed facts appear of record in this case.

1. Milwaukee County is a municipal corporation. During the period from September 1973 to December 1974 a document known as the Milwaukee Area Transit Development Program (TDP) was prepared on its behalf and was subsequently adopted by the Milwaukee County Board. The period for which the document planned was 1975–1980. Answers of Milwaukee County Defendant to Written Interrogatories # 3.

2. The TDP discussed the possibility of acquiring the existing fleet of vehicles operated by the Milwaukee and Suburban Transport Company and specifically recognized that:

It is not possible for the handicapped to use the existing bus fleet, and it would be very expensive to convert any of the present fleet to handle the handicapped. TDP at p. 123.

3. The TDP provided a five (5) year program for the improvement of the public mass transportation system, a schedule for capital, non-capital and operational improvements. TDP at p. 4.

7. The factual situation of this case and the case recently considered by the Seventh Circuit as they bear on the issues relating to jurisdiction

4. The TDP adopted by the Milwaukee County Board did not specify any plans or timetable for providing transit services to the handicapped either by means of regular route service or by means of an alternative system of service.

5. Milwaukee County submitted an Application for a Capital Grant (WI–03–0005) to the Urban Mass Transportation Administration, United States Department of Transportation on or about March 15, 1976 for assistance in purchasing the assets of the Milwaukee and Suburban Transit Company and one hundred (100) new buses. (Hereinafter Application). The Application was made under the Urban Mass Transportation Act of 1964, as amended, 49 U.S.C. § 1601 *et seq.* Milwaukee County Defendants' Answers, ¶ 12.

6. The Application discussed the design of the buses in the existing fleet to be purchased and specifically stated:

The steps at the entrance of the bus prevents some of the handicapped from using this mode. Their height and narrowness, exacerbated by the distance from the curb, make them impassable for anyone in a wheelchair and very difficult for many others. Application, p. M–6.

7. The Application discussed the transportation services available to the handicapped in Milwaukee County and noted that a private company with specially equipped vehicles provided taxi like demand-response services but that the rates of four ($4.00) dollars for the first thirty (30) blocks and fifty-five (.55) cents per additional ten (10) city blocks was "beyond the pocketbook of many non-ambulatory and is far too expensive for the regularly employed handicapped person". Application pages M–4, M–10 and M–12.

8. The Application did not specify how Milwaukee County, upon taking over the public mass transportation system, planned to make available vehicles or services which could be effectively and readily used by the mobility handicapped.

and the viability of the cause of action are strikingly similar.

9. The Application was prepared and submitted subsequent to the effective date of 29 U.S.C. § 794.

10. As of at least October 1974, UMTA possessed a listing of a variety of vehicles designed for use in mass transportation services which would be accessible to handicapped individuals. Directory of Vehicles for the Elderly and Handicapped, October 1974. (Hereinafter "Directory, October 1974").

11. In May 1976, UMTA approved the Milwaukee County Application and granted $17,140,400 in UMTA funds for the acquisition of the assets of the Milwaukee and Suburban Transport Corporation and for the purchase of one hundred (100) new transit buses. The Approval Memorandum noted that the non-ambulatory would not directly benefit from the project. Approval Memorandum, pp. 3–4.

12. The Approval Memorandum refers to two hundred (200) specifically equipped vehicles in the County that provide for the transportation of non-ambulatory persons. (Approval Memorandum, p. 4). The Application indicates that only thirty (30) of the private company's one hundred seventy-six (176) vehicles were devoted to demand-response service that the average wheelchair capability per vehicle was approximately 1.78 and that the costs of private services was four ($4.00) dollars for the first thirty (30) blocks and fifty-five (.55) cents for each additional ten (10) blocks. Of the twenty-five (25) buses or vans which the Application indicated were operated by non-profit organization, thirteen (13) vehicles were restricted to use for special purposes and nine (9) others were restricted as to the area to be served.

13. On June 28, 1975 the Milwaukee County Transit Board approved the specifications for the purchase of one hundred (100) new buses. The specifications did not require delivery of a bus which was equipped or modified so as to provide independent entry and exit for mobility handicapped individuals. MCTB Answers to Interrogatories # 49 and # 50.

14. As of June 28, 1975 MCTB was aware of the availability of specially equipped vehicles that could be acquired and operated and/or subsidized so as to provide mass transportation services to non-ambulatory persons in Milwaukee County. Application, p. M–10.

15. The MCTB has engaged the Southeastern Wisconsin Regional Planning Commission (SEWRPC) to study and plan for meeting the mass transportation needs of the Elderly and Handicapped.

The following conclusions of law are made on the facts stated above.

1. This cause of action is authorized by 29 U.S.C. § 794, and this Court has jurisdiction over the parties and subject matter of the action under 28 U.S.C. § 1343 and 5 U.S.C. § 702.

2. Defendant members of the MCTB, by operating a mass transit system which is currently effectively inaccessible to mobility handicapped individuals and by attempting to purchase one hundred new effectively inaccessible buses so as to knowingly exclude mobility handicapped individuals from participating in the benefits of the federally assisted mass transit program in Milwaukee County, have violated the non-discrimination rights of mobility handicapped persons as declared in 29 U.S.C. § 794.

3. Defendants Coleman and Patricelli, by approving the Application of MCTB for capital assistance with full knowledge that both the existing transit system and the one hundred new buses would be effectively inaccessible to handicapped individuals and by correspondingly failing to require Milwaukee County to give assurances that appropriate mass transit services would be provided to the mobility handicapped so as not to exclude such individuals from the federally assisted mass transit program, have discriminated against plaintiffs in violation of the rights declared in 29 U.S.C. § 794.

The plaintiffs' order for summary judgment is, therefore, granted and defendants' motions for summary judgment denied.

Once liability has been established, it becomes the duty of the Court to fashion a remedy.

The Court is confronted with countervailing problems. The plaintiffs are entitled to the benefits of the mass transit system, now. The statute does not allow the County to wait until the perfect solution is found. At the same time the technology necessary to implement some of the proposed solutions to the problem is not fully advanced, nor has this Court seen any study of the particular problems facing Milwaukee County in this area. Adding to the difficulty is the fact that the county is operating a transit system with buses which average almost 15 years in age. The remedy must provide some access to the transit system for the plaintiff class and assure that additional improvements will be made without placing restrictions on the defendants that will necessarily result in collapse of the transit system.

Subsequent to the initiation of this action, the Urban Mass Transportation Administrator promulgated regulations, in part under the authority of section 504.[8]

**8.** 49 CFR § 613.204 states:

Additional criteria for Urban Mass Transportation Administrator's approvals under 23 CFR 450.320.

The Urban Mass Transportation Administrator will grant project approvals pursuant to 23 CFR 450.320(a)(3) only if:

(a) The urban transportation planning process exhibits satisfactory special efforts in planning public mass transportation facilities and services that can be utilized by elderly and handicapped persons; and

(b) The annual element of the transportation improvement program developed pursuant to 23 CFR 450.118 and submitted after September 30, 1976, contains projects or project elements designed to benefit elderly and handicapped persons, specifically including wheelchair users and those with semiambulatory capabilities; and

(c) After September 30, 1977, reasonable progress has been demonstrated in implementing previously programmed projects.

49 CFR § 609.15(b) states in part:

[P]rocurement solicitations shall provide for a bus design which permits the addition of a wheelchair accessibility option and shall require an assurance from each bidder that it offers a wheelchair accessibility option for its buses. The term "wheelchair accessibility option" means a level change mechanism (e. g., lift or ramp), sufficient clearances to permit a wheelchair user to reach a securement location, and at least one wheelchair securement device.

Advisory information to be added to the appendix to 23 CFR Part 450 gives additional guidance.

The urban transportation planning process must include special efforts to plan public mass transportation facilities and service that can effectively be utilized by elderly and handicapped persons. As used in this guidance, the term 'special efforts' refers both to service for elderly and handicapped persons in general and specifically to service for wheelchair users and semiambulatory persons. With regard to transportation for wheelchair users and others who cannot negotiate steps, 'special efforts' in planning means genuine, good-faith progress in planning service for wheelchair users and semiambulatory handicapped persons that is reasonable by comparison with the service provided to the general public and that meets a significant fraction of the actual transportation needs of such persons within a reasonable time period.

Other sections give examples of "special efforts."

1. A program for wheelchair users and semiambulatory handicapped persons that will involve the expenditure of an average annual dollar amount equivalent to a minimum of five percent of the section 5 [49 U.S.C. § 1604] apportionment to the urbanized area. These 'five percent funds' may be derived from sources other than section 5. The term 'average' permits lower expenditure years to be balanced by higher expenditure years but does not permit an initial delay in implementing projects. The term 'section 5 apportionment' refers to UMTA's formula apportionment for areas with a population of 200,000 or more and to the Governor's apportionment for areas with a population of 200,-000 or more and to the Governor's apportionment for areas with a population under 200,-000. Projects that qualify as local 'special efforts' for wheelchair users and other semiambulatory persons under the initial paragraphs of this advisory information would be counted in computing the five percent.

2. Purchase of only wheelchair-accessible new fixed route equipment until one-half of the fleet is accessible, or, in the alternative, provision of a substitute service that would provide comparable coverage and service levels.

3. A system, of any design, that would assure that every wheelchair user or semiambulatory person in the urbanized area would have public transportation available is requested for 10 round-trips per week at fares comparable to those which are charged on

These regulations and accompanying guidelines provide an appropriate point of reference for the Court in drafting the remedy.

The regulations do not require a full and immediate solution to the problem. What they do require is that the planning process show that special efforts are being taken to ensure that the mobility handicapped will be provided with services equivalent to the rest of the community.

IT IS THEREFORE ORDERED that MCTB defendant and their agents, employees, attorneys, successors in office, assistants and all persons acting in concert or cooperation with them or at their direction or under their control are permanently enjoined from acquiring, leasing, renting or in any way operating any mass transit vehicles, in addition to those Milwaukee County currently owns and operates, which are not designed for accessibility and effective utilization by mobility handicapped individuals until such time as defendants can demonstrate to the satisfaction of this Court that mass transportation facilities and services which can be effectively utilized by mobility handicapped individuals have been planned, designed and are being made available to such individuals in a non-discriminatory manner.

IT IS FURTHER ORDERED that defendants Coleman and Patricelli and their agents, employees, attorneys, successors in office, assistants and all persons acting in concert or cooperation with them or at their direction or under their control are permanently enjoined from releasing any federal funds to MCTB, Milwaukee County or any of their agents or subdivisions which are in any manner intended to assist MCTB or Milwaukee County in acquiring, leasing, renting subsidizing or in any way operating

any mass transit vehicles, in addition to those Milwaukee County currently owns or operates, which are not designed for accessibility and effective utilization by mobility handicapped individuals until such time as defendants can demonstrate to the satisfaction of this Court that mass transportation facilities and services which can be effectively utilized by mobility handicapped individuals have been planned, designed and are being made available to such individuals in a non-discriminatory manner.

This injunction is issued with the proviso that mass transit vehicles not designed as stated above may be acquired with the utilization of federal funds if the MCTB can show to the satisfaction of this Court that there is a compelling necessity for immediate purchase of such vehicles such that a failure of the system would result without their purchase and that all diligence is being used to plan, design and implement facilities and services which can be effectively utilized by mobility handicapped individuals.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this action until all requirements of this Court and the judgment herein are satisfied.

standard transit buses for trips of similar length, within the service area of the public transportation authority. The system could, for example, provide trip coupons to individuals who would then purchase the needed service. 41 F.R. 18234 (April 30, 1976).