William BAKER et al.,
Plaintiffs–Appellants,

v.

Dean BELL et al., Defendants–Appellees.

No. 79–2173.

United States Court of Appeals,
Fifth Circuit.

Nov. 17, 1980.

Donald Juneau, Susan H. Campos, New Orleans, La., for plaintiffs–appellants.

# 1048

Kent Hull, Ronald M. Soskin, National Center for Law and the Handicapped, Inc., Notre Dame, Ind., for amicus curiae.

Debra J. Fischman, New Orleans, La., for Dean Mell, the Office of Transit Admin., Ernest Morial, City of New Orleans.

Marc J. Yellin, Asst. U. S. Atty., New Orleans, La., Trudy B. Levy, Atty.–Advisor, Urban Mass Transportation Adm., Washington, D. C., for Brock Adams and Richard Page.

Before RUBIN, HENDERSON and REAVLEY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Both the Rehabilitation Act of 1973 and the Urban Mass Transportation Act declare that federally financed programs shall be available to handicapped persons. Persons handicapped to such a degree that they are confined to wheelchairs challenge the use of federal grants to the City of New Orleans for the purchase of 175 buses that they will be unable to board and use on two basically different grounds: the action of the federal agencies violates the duties imposed on them as governmental units under applicable departmental regulations, and the action of all of the parties involved violates the personal rights of the physically–disabled persons who join as a class in this suit. We conclude that the district court correctly determined that the agencies had complied with the regulations applicable to

them, but that the disabled persons are entitled to court consideration of their personal claims and we, therefore, remand for further consideration of that issue.

I.

This class action on behalf of mobility–disabled individuals[1] seeks to bar the purchase of transit buses by the City of New Orleans[2] and the public utility that operates the City's urban transportation services, New Orleans Public Service, Inc. (NOPSI), with funds provided in major part by a federal grant.[3]

The grant was made to finance 80% of the purchase price of 185 new standard size buses to replace older buses now in service on fixed transit routes. NOPSI is to provide the other 20% of the purchase price. Ten of these buses are to be equipped with wheelchair lift devices; the other 175 buses could not be boarded by wheelchair users or others who cannot negotiate steps. The grant is also to fund 80% of the acquisition cost of ten smaller coaches, all lift–equipped, which will be leased by the City to a non–profit corporation to provide transportation for the elderly and handicapped. The local contribution for these ten vehicles will be made by the City of New Orleans.

The plaintiffs charge that, by participating in this acquisition, the local government defendants discriminate against them, violating the duty imposed upon recipients of federal assistance[4] because mobility–dis-

---

1. The class is described as "mobility–disabled persons." The five included plaintiffs can move only in wheelchairs. The international office and the New Orleans chapter of an association known as Physically Limited Association for a Constructive Environment also joined as Plaintiffs.

2. The local defendants, government officials and a private utility company, are the Office of Transit Administration for the City of New Orleans and its administrator, Dean Bell, and the City of New Orleans and its mayor, Ernest Morial, and New Orleans Public Service, Inc. (NOPSI), an investor–owned utility company which leases and operates the City's standard transit vehicles.

3. A grant of $19,485,016 was approved by the Urban Mass Transit Administration (UMTA) under Section 3 of the Urban Mass Transportation Act, 49 U.S.C. § 1602, on September 12, 1978. Due to this grant approval, two federal government officials, Secretary of Transportation Brock Adams and Administrator of the Urban Mass Transit Administration Richard Page, are also defendants in this action.

4. The complaint stated a cause of action against all of the defendants for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq., § 794 and the implementary guidelines promulgated by the Department of Health, Education and Welfare (HEW); a claim against the local and federal govern-

abled persons will not be provided with service comparable to that afforded by the 175 buses that they will be unable to use, violating Section 504[5] of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Department of Health, Education and Welfare (HEW) implementary guidelines promulgated on January 13, 1978, which prohibit discrimination against handicapped individuals under any program receiving federal financial assistance, as well as Section 16(a)[6] of the Urban Mass Transportation Act (UMT Act) of 1964, as amended, 49 U.S.C. § 1612(a), which embodies the policy of nondiscrimination in transportation, and the 1976 Urban Mass Transit Administration (UMTA) regulations promulgated under that provision. Finally, the plaintiffs contend that the purchase would deprive the mobility–disabled class of effective use of public transportation and thus deny them equal protection of the laws, violating the fourteenth amendment and the Civil Rights Act of 1871, 42 U.S.C. § 1983.[7]

The plaintiffs contend that, by approving the grant to finance the discriminatory acquisition, the federal government officials, who are joined as defendants, violated Section 504 and the 1978 HEW guidelines as well as Section 16(a) of the UMT Act and the 1976 UMTA regulations.

Upon motions by all of the defendants for dismissal or alternatively for summary judgment, the district court concluded that the HEW guidelines promulgated under Section 504 were not yet effective when the grant was approved and, furthermore, were not applicable to the local government defendants. The court also determined that the UMT Act, as interpreted by the controlling UMTA regulations, was satisfied, relying upon the findings of the UMTA Administrator as set forth in the administrative record. The court noted "that all of the claims asserted in this action, with the exceptions of the constitutional and § 1983 claims (which we find to be without merit), may be decided within the framework of judicial review of the final action of the UMTA in approving Capital Grant Project No. LA–03–0015." Thus, the district court, relying solely upon the administrative record and applying the standard of review stated in Section 10(e)[8] of the Administra-

---

ment defendants for violation of plaintiffs' rights under Section 16(a) of the Urban Mass Transportation Act (UMT Act) of 1964, as amended, 49 U.S.C. §§ 1601 *et seq.*, § 1612(a) and the regulations promulgated thereunder; and a claim against the local government defendants for violation of the equal protection clause of the fourteenth amendment as well as for violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

5. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 provides:
   No otherwise qualified handicapped individual in the United States, as defined in Section 7(6) [29 U.S.C. § 706(6)], shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
   This provision was amended in 1978 to extend its application to any program or activity conducted by any federal executive agency or by the United States Postal Service and to reflect the fact that the Act's definition of the term "handicapped individual" is now codified in Section 7(7) of the Act, 29 U.S.C. § 706(7).

6. Section 16(a) of the Urban Mass Transportation Act of 1964, as amended, 49 U.S.C. § 1612(a), provides as follows:

It is hereby declared to be the national policy that elderly and handicapped persons have the same right as other persons to utilize mass transportation facilities and services; that special efforts shall be made in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured; and that all Federal programs offering assistance in the field of mass transportation (including the programs under this chapter) should contain provisions implementing this policy.

7. The plaintiff class contends that NOPSI, by leasing and operating the buses to be acquired under the grant, would violate Section 504 of the Rehabilitation Act and the applicable regulations. The complaint did not allege that NOPSI's participation would violate the UMT Act.

8. Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, provides in pertinent part:
   To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the

tive Procedure Act (APA), 5 U.S.C. § 706, concluded that UMTA's decision to approve the grant was not made "arbitrarily, capriciously, or in an abuse of discretion."

Having validated the grant approval by UMTA, the district court concluded that the local government defendants' actions and those of the federal defendants did not violate the controlling UMTA regulations. The agency action in approving the grant authorized NOPSI's anticipatory actions in leasing and operating the transit vehicles. However, the trial court did not consider separately the plaintiffs' claims for relief arising by implication from Section 504 of the Rehabilitation Act as distinguished from their claims that the actions of the federal agencies violated the regulations applicable to agency action promulgated under that statute.[9]

In reviewing the claims under the applicable Section 504 regulations, the district court did not conduct a de novo hearing but merely reviewed the administrative record. Because it considered the action solely upon the administrative record, the district court refused to permit discovery by the plaintiff class.

The constitutional claim was dismissed by the district court, citing with approval the rationale in *Vanko v. Finley*, 440 F.Supp. 656 (N.D.Ohio 1977), i. e., the constitutional provision adds nothing to the plaintiffs' cause of action under the federal statutes, which impose a higher standard than the constitutional provision might require. Finally, having found no violation of any statutory or constitutional provision by the

local government defendants, the court determined that the Section 1983 claim lacked merit. Accordingly, the trial court granted the defendants' motions for summary judgment.

## II. UMT ACT

Section 16(a) [10] of the Urban Mass Transportation Act of 1964, as amended, 49 U.S.C. § 1612(a), and the regulations promulgated under that section, require governmental agencies to make special efforts to benefit handicapped persons and to include provisions implementing that policy in all programs receiving federal financial assistance. The claimed violation of Section 16(a) by the federal government defendants consists of UMTA's approval of the grant of financial aid to a noncomplying transit authority.

The district court correctly determined that the plaintiffs had standing to contest the validity of UMTA's action in approving the grant. The "three–part test [for standing to contest validity of agency actions] established in *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) and *Association of Data Processing Serv. Organ., Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) . . . is: (1) the challenged action must result in injury–in–fact to the plaintiffs; (2) the interest invaded must be arguably within the zone of interest to be protected by the statute; and (3) there must be no statutory prohibition of judicial review." *Suntex Dairy v. Bergland*, 591 F.2d 1063, 1066 (5th Cir. 1979).

---

terms of an agency action. The reviewing court shall–

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be–
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law

\* \* \* \* \* \*

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**9.** The court noted that the complaint did not "contain an allegation that either § 504 of the

Rehabilitation Act or § 16(a) of the UMT Act imposes duties on the local governmental defendants broader than those mandated by the controlling regulations, whether the HEW guidelines or the UMTA regulations. . . . Accordingly, [it did] not address that issue. . . ." For reasons set forth below, we think the complaint did state a claim that Section 504 accords them a different, and potentially broader, basis for relief.

**10.** For the text of Section 16(a) of the Urban Mass Transportation Act of 1964, as amended, 49 U.S.C. § 1612(a), *see note 6, supra.*

The constitutionally–compelled injury–in–fact element of the standing test requires the plaintiffs to demonstrate a sufficiently direct and concrete injury, *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 73, 98 S.Ct. 2620, 2631, 57 L.Ed.2d 595, 611 (1978), which is likely to be redressed if the plaintiffs prevail on the merits. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 262, 97 S.Ct. 555, 561, 50 L.Ed.2d 450, 462 (1977); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450, 460 (1976). The mobility–disabled plaintiffs in the present case have met the constitutional requisite for standing; their injury–in–fact consists of the direct and personal loss they suffer if they are unable to use public transportation.

The second element of the standing test is mandated by the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.* and § 701 *et seq.* A person who is "adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof" under Section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702. A plaintiff satisfies the APA standing requirement if his interests are arguably within the zone of interests that the statute in question was intended to protect or regulate. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184, 188 (1970). "The 'relevant statute' is the agency's enabling act or other legislation under which the zone of interests is purported to exist." 5 B. Mezines, J. Stein & J. Gruff, Administrative Law § 50.03, at 50–25 (1980).

"Section 16(a) of the Urban Mass Transportation Act of 1964, as amended (49 U.S.C. 1612), declares the national policy that elderly and handicapped persons have the same right as other persons to utilize mass transportation facilities and services...." 23 C.F.R. Part 450, Subpart A, Appendix B, as added by 41 Fed.Reg. 18,235 (1976). Because the interests that plaintiffs seek to advance are within the zone of interests intended to be protected by Section 16(a) of the UMT Act, the plaintiffs have satisfied the APA standing requirement.[11]

Moreover, there is no indication that judicial review of agency action under the UMT Act is prohibited. Therefore, the plaintiffs have standing to contest the validity of UMTA's approval of the grant application in the present case.

Judicial review of agency action is generally limited to an examination of the agency record. 5 B. Mezines, J. Stein & J. Gruff, Administrative Law § 51.04 (1980). Review de novo, with independent findings of fact, is appropriate only when the agency action "is adjudicatory in nature and the agency factfinding procedures are inadequate" and "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 152 (1971). *Accord Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106, 111 (1973). Neither situation exists here; thus, the district court properly limited its review of the plaintiffs' claims under the UMT Act to the administrative record.

In reviewing UMTA's approval of the grant, the task of the district court, as specified in the APA, was to determine whether the agency's findings and conclusions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A). "Under the 'arbitrary and capricious' standard the scope of review is a narrow one. A reviewing court must 'consider whether the

11. The district court cited Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as the "relevant statute" within the meaning of which the plaintiffs were aggrieved by UMTA's actions. We shall hereafter consider the plaintiffs' rights under that statutory provision. The agency action in this case was equally adverse to the plaintiffs' interests as protected by Section 16(a) of the UMT Act; we consider that provision to be the "relevant statute" for purposes of the APA standing requisite and review of the plaintiffs' claims under the UMT Act.

decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.' *Citizens to Preserve Overton Park v. Volpe, supra,* 401 U.S. at 416, 91 S.Ct. at 824." *Bowman Transportation, Inc. v. Arkansas–Best Freight System Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447, 455 (1974). *See Refrigerated Transport Co. v. ICC,* 616 F.2d 748, 751 (5th Cir. 1980).

**12.** 49 C.F.R. Part 609, specifically § 609.15 (1976), amended by 42 Fed.Reg. 48,340 (1977); 49 C.F.R. § 613.204 (1975) and the Appendix to 49 C.F.R. Part 613, Subpart B, on 49 C.F.R. § 613.204, added by 41 Fed.Reg. 18,234 (1976); 23 C.F.R. Part 450, Subparts A and C (1975) and Appendix B to Subpart A, as added by 41 Fed.Reg. 18,235 (1976).

**13.** 49 C.F.R. § 613.204 (1975) states:
Additional criteria for Urban Mass Transportation Administrator's approvals under 23 CFR 450.320.
The Urban Mass Transportation Administrator will grant project approvals pursuant to 23 CFR 450.320(a)(3) only if:
(a) The urban transportation planning process exhibits satisfactory *special efforts* in planning public mass transportation facilities and services that can be utilized by elderly and handicapped persons; and
(b) The annual element of the transportation improvement program developed pursuant to 23 CFR 450.118 and *submitted after* September 30, 1976, contains projects or project elements designed to benefit elderly and handicapped persons, specifically including wheelchair users and those with semi-ambulatory capabilities; and
(c) After September 30, 1977, reasonable progress has been demonstrated in implementing previously programmed projects.
49 *C.F.R.* § 613.204 (*emphasis added*).
The appendix to 49 C.F.R. Part 613, Subpart B, on 49 C.F.R. § 613.204, added by 41 Fed.Reg. 18,234 (1976), provides illustrative examples of a level of effort that will satisfy the "special efforts" requirement:
1. ' A program for wheelchair users and semiambulatory handicapped persons that will involve the expenditure of an average annual dollar amount equivalent to a minimum of five percent of the section 5 [49 U.S.C. § 1604] apportionment to the urbanized area. These "five percent funds" may be derived from sources other than section 5. The term

In order to determine whether UMTA's decision was based on a consideration of the relevant factors, the district court was required to decide which of several regulations promulgated under Section 16(a) of the UMT Act of 1964, as amended, 49 U.S.C. § 1612(a), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, was applicable to this grant. The regulations promulgated under Section 16(a) of the UMT Act [12] mandated "special efforts" to plan public mass transportation services that can effectively be utilized by the handicapped.[13]

"average" permits lower expenditure years to be balanced by higher expenditure years but does not permit an initial delay in implementing projects. The term "section 5 apportionment" refers to UMTA's formula apportionment for areas with a population of 200,000 or more and the Governor's apportionment for areas with a population under 200,000. Projects that qualify as local "special efforts" for wheelchair users and other semiambulatory persons under the initial paragraphs of this advisory information would be counted in computing the five percent.
2. Purchase of only wheelchair–accessible new fixed route equipment until one–half of the fleet is accessible, or, in the alternative, provision of a substitute service that would provide comparable coverage and service levels.
3. A system, of any design, that would assure that every wheelchair user or semiambulatory person in the urbanized area would have public transportation available if requested for 10 round–trips per week at fares comparable to those which are charged on standard transit buses for trips of similar length, within the service area of the public transportation authority. The system could, for example, provide trip coupons to individuals who would then purchase the needed service.
Appendix B to 23 C.F.R. Part 450, Subpart A, providing advisory information on planning for elderly and handicapped persons under the UMT Act states in part:
The urban transportation planning process must include *special efforts* to plan public mass transportation facilities and service that can effectively be utilized by elderly and handicapped persons. As used in this guidance, the term "special efforts" refers both to service for elderly and handicapped persons in general and specifically to service for wheelchair users and semiambulatory per-

In 1976, a presidential executive order,[14] issued to enforce Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, directed HEW to coordinate the implementation of Section 504 among all federal agencies. Each federal department and agency empowered to provide federal assistance was ordered to issue regulations to implement Section 504 consistent with standards to be established by HEW. On January 13, 1978, HEW published guidelines to be followed by each federal agency in issuing its regulations necessary to implement Section 504. 43 Fed.Reg. 2,132–39 (1978) (to be codified in 45 C.F.R. Part 85).

It was evident that existing structures could not instantly be modified to accommodate disabled persons and that mass–produced vehicles must be designed a considerable time before they are actually put into use. Therefore, the HEW guidelines distinguish between existing and new facilities. As to new facilities to be acquired, Section 85.58 of the HEW guidelines provides:

New Construction.

(a) Except as provided in paragraph (b) of this section, new facilities shall be designed and constructed to be readily accessible to and useable by handicapped persons.

However, because redesigned buses could not be purchased immediately, the guideline continues:

(b) The Department of Transportation may defer the effective date for requiring all new buses to be accessible if it

concludes on the basis of its section 504 rulemaking process that it is not feasible to require compliance on the effective date of its regulation: Provided, That *comparable, accessible services are available to handicapped persons in the interim* and that the date is not deferred later than October 1, 1979.

43 Fed.Reg. 2,139 (1978) (emphasis added).

The plaintiffs contend that the requirement of comparable services in the interim entitles them to such service immediately. They contend that this HEW standard requiring that "comparable, accessible services" for handicapped persons be provided by federal aid recipients supersedes the "special efforts" standard of the 1976 UMTA regulations. Moreover, they assert that the "interim" period during which such comparable services must be available began on the day the HEW guidelines became effective, January 13, 1978, and hence comparable services were required when the grant to New Orleans was approved.

Although the HEW guidelines are not completely clear on this point, we concur in the trial court's determination that the "interim" (during which Section 85.58(b) requires that comparable, accessible service be provided) refers to that period beginning with the effective date of the Section 504 regulations to be issued by the Department of Transportation (DOT) and ending on October 1, 1979, the date when the full–accessibility standard is mandated for all agencies.[15]

---

sons. With regard to transportation for wheelchair users and others who cannot negotiate steps, "special efforts" in planning means genuine, good–faith progress in planning service for wheelchair users and semi-ambulatory handicapped persons that is reasonable by comparison with the service provided to the general public and that meets a significant fraction of the actual transportation needs of such persons within a reasonable time period.
23 C.F.R. Part 450, Subpart A, Appendix B (emphasis added).

**14.** Exec. Order No. 11,914, 41 Fed.Reg. 17,871 (1976) [to be codified in 45 C.F.R. Part 85, Appendix A (1978)].

**15.** The supplementary information published with the HEW guidelines sheds some light on what interim period is referred to by Section 85.58(b).

A difficult problem that has arisen during the comment period with respect to § 85.58 is its effect upon buses ordered in the interval between the final issuance of individual agency 504 regulations and the effective date of the Department of Transportation's ruling concerning Transbus. (That ruling requires that all buses acquired with the. assistance of the Urban Mass Transportation Administration (UMTA), ordered after September 30, 1979, meet the specifications for Transbus–a low–floor, ramped bus.) · Because of the complexity of the bus accessibility issue, the final regulation has been amended to allow the

We also agree with the trial court's assessment that these HEW regulations are directed towards guiding the various federal agencies, including DOT and UMTA, in the promulgation of their regulations as required by the presidential executive order, and are not applicable to the recipients of the federal aid. As the supplementary information published with the HEW guidelines explains, "the [HEW] regulation applies to Federal agencies, not to recipients. . . ." 43 Fed.Reg. 2,133 (1978). Thus, if the still unissued DOT and UMTA regulations implementing Section 504 in compliance with the presidential directive satisfied the HEW full–accessibility standard and became effective before the October 1, 1979, HEW deadline, the HEW regulations would not override those issued by DOT.

DOT's regulation promulgated to comply with the presidential directive became effective on July 2, 1979, and superseded most of the existing UMTA regulations.[16]   44 Fed.Reg. 31,442 et seq. (1979) (to be codified in 49 C.F.R. Part 27). The new rule implements both Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Section 16(a) of the UMT Act of 1964, as amended, 49 U.S.C. § 1612(a). It mandates

a full accessibility standard[17] instead of the "special efforts" standard provided by the 1976 UMTA regulations.   44 Fed.Reg. 31,-477–481 (1979) (to be codified in 49 C.F.R. Part 27, Subpart E).

The full accessibility standard was not applicable until the effective date of the DOT's regulation, July 2, 1979. This complied with HEW's requirement that all new buses, acquired after September 30, 1979, be accessible to handicapped persons. Therefore, for purposes of judicial review of UMTA's grant approval on September 12, 1978, the district court appropriately looked to the 1976 UMTA regulation "special efforts" standard.

Applying the scope of review mandated by the APA, 5 U.S.C. § 706(2)(A), the district court properly reviewed the administrative record and concluded that, in light of the 1976 UMTA regulations "special efforts" standard,[18] UMTA's decision to approve the grant to the City of New Orleans was not "arbitrary and capricious." Thus, the district court's award of summary judgment to the defendants as to plaintiffs' claims under Section 16(a) of the Urban Mass Transportation Act was not error.

Department of Transportation (DOT) to defer the effective date for requiring all new buses to be accessible if DOT concludes during its section 504 rulemaking process that it is not possible to do so by the effective date of its own section 504 regulation and if comparable, accessible services are available to handicapped persons in the meantime. The date may not, however, be deferred beyond the present effective date of the Transbus decision–October 1, 1979.
43 Fed.Reg. 2,136 (1978).

16. "This rule supersedes the existing UMTA regulations (49 CFR Part 609, 49 CFR 613,204, and the appendix to 49 CFR part 613, Subpart B, on 49 CFR 613.204), except that the requirements for Transbus remain separate from the rule [49 C.F.R. § 609.15]." 44 Fed.Reg. 31,454 (1979). 49 C.F.R. § 609.15, as amended by 42 Fed.Reg. 48,340 (1977), requires transit authorities seeking federal assistance after September 30, 1979, to purchase the "transbus," a low-·floor ramped bus suitable for elderly and handicapped passengers.

17. For example, "some matters, such as wheelchair accessibility to fixed route bus systems,

are no longer matters of local option." 44 Fed.Reg. 31,455 (1979).

18. The district court determined that each of the three requirements for grant approval specified by 49 C.F.R. § 613.204, set out in note 13, supra, was either satisfied or was inapplicable. According to UMTA's grant approval memo and a connected report, special efforts in planning mass transportation for the mobility–disabled were achieved by the participation of handicapped consumers in the planning process and the identification of the location and transportation needs of the handicapped as well as the identification of the governmental and private nonprofit agencies providing for those transportation needs. The district court found that the expenditure on transportation programs for the mobility–disabled of five percent of funds apportioned to the urbanized area, an illustrative method of compliance stated in the appendix to 49 C.F.R. Part 613, Subpart B, on 49 C.F.R. § 613.204, see note 13, supra, satisfied the requirement of special efforts in program development. Finally, the progress–in–implementation requirement was inapplicable because the New Orleans area had no previously programmed projects.

## III. Section 504, Rehabilitation Act of 1973

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides: [19]

No otherwise qualified handicapped individual in the United States, as defined in Section 7(6) [29 U.S.C. § 706(6)], shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The legislative history indicates that this policy is intended to prevent discrimination against handicapped individuals in federally supported transportation services.[20]

We recognized in *Camenisch v. University of Texas*, 616 F.2d 127 (5th Cir. 1980), that Section 504 implies a private cause of action and, therefore, entitles handicapped persons to obtain injunctive relief to enforce its antidiscrimination policy.[21] *See Tatro v. State of Texas*, No. 80–1069 (5th Cir. Sept. 2, 1980).[22]

Although the complaint, construed liberally in accordance with the lenient pleading standards of the Federal Rules of Civil Procedure, gave sufficient notice that a claim under Section 504 was being asserted, the implication of a private cause of action and the judicial standard applicable thereto were neither brought to the attention of the trial court nor addressed by its decision.[23] Generally this court will not reach the merits of an issue not considered by the district court. *Pierre v. United States*, 525 F.2d 933 (5th Cir. 1976); *Stanley Educational Methods, Inc. v. Becker C.P.A. Review Course, Inc.*, 539 F.2d 393 (5th Cir. 1976); *EEOC v. Standard Forge and Axle Co.*, 496 F.2d 1392 (5th Cir. 1974). However, "when a pure question of law is involved and a refusal to consider it would result in a miscarriage of justice," *Martinez v. Mathews*, 544 F.2d 1233, 1237 (5th Cir. 1976), we condone counsel's failure to bring issues raised on appeal to the attention of the trial court. As the Supreme Court has said, the determination "of what questions

---

**19.** The amendment to Section 504 by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978, Pub.L. No. 95–602, Title I §§ 119, 122(d)(2), 92 Stat. 2982, 2987, which extended its application to programs conducted by any federal executive Agency or by the United States Postal Service and renumbered the section of the Act defining "handicapped individual," is not relevant to the issue presented here.

**20.** "Section 504 was enacted to prevent discrimination against all handicapped individuals, regardless of their need for, or ability to benefit from, vocational rehabilitation services, in relation to Federal assistance in ... transportation ... programs." S.Rep. No. 93–1297, 93d Cong., 2d Sess. 38 (1974), *reprinted in*, [1974] 4. U.S. Code Cong. & Ad. News, pp. 6373, 6388. The relevant legislative history of the 1973 Act and the Rehabilitation Act amendments of 1974 is discussed in *Lloyd v. Regional Transp. Auth.*, 548 F.2d 1277 (7th Cir. 1977).

**21.** The implication of a private cause of action is supported by the legislative approach to implementation of Section 504 which was intended to "permit a judicial remedy through a private action." S.Rep. No. 93–1297, 93d Cong., 2d Sess. 39–40 (1974), *reprinted in* [1974] 4 U.S. Code Cong. & Ad. News, pp. 6373, 6391. This implied cause of action may be utilized by mobility–handicapped persons to enforce the antidiscrimination policy of Section 504 in a

mass transit context. *United Handicapped Fed'n v. Andre*, 558 F.2d 413 (8th Cir. 1977); *Leary v. Crapsey*, 566 F.2d 863 (2d Cir. 1977); *Lloyd v. Regional Transp. Auth.*, 548 F.2d 1277 (7th Cir. 1977); *Vanko v. Finley*, 440 F.Supp. 656 (N.D.Ohio 1977); *Bartels v. Biernat*, 427 F.Supp. 226 (E.D.Wis.1977); *Michigan Paralyzed Veterans of America v. Coleman*, 451 F.Supp. 7 (E.D.Mich.1977).

**22.** The Supreme Court pretermitted the question whether an implied private cause of action exists to enforce Section 504, 29 U.S.C. § 794, in *Southeastern Community College v. Davis*, 442 U.S. 397, 404 n.5, 99 S.Ct. 2361, 2366 n.5, 60 L.Ed.2d 980, 987 n.5 (1979). However, the opinion of Justice Stevens in *Regents of California v. Bakke* appears to recognize a private cause of action to enforce this section of the Rehabilitation Act of 1973, 29 U.S.C. § 794. 438 U.S. 265, 420 & n.27, 98 S.Ct. 2733, 2815 & n.27, 57 L.Ed.2d 750, 852 & n.27 (1978).

**23.** While the issue was sufficiently presented to be preserved, it lurked partially submerged and was expressed clearly before us in a brief amicus curiae by the National Center For Law and the Handicapped, Inc. Plaintiffs subsequently addressed the issue in a letter filed a year after the case was briefed and one week before oral argument.

may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals.... [T]here are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt ... or where 'injustice might otherwise result.' *Hormel v. Helvering*, [312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037, 1041 (1941)]. ..." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976).

Considering the gravity of the legal issue and the profound effect failure to resolve it would have on all the litigants, the fact that it appears to be largely a legal question and the injustice that might result if the question were pretermitted, we have decided that the case should be remanded to the trial court for initial determination of the Section 504 claims. However, because the issue has been briefed, we provide guidance to the district court on a few questions that are likely to arise on remand.

■ Inherent in the concept of a private cause of action is the right to seek judicial relief. The plaintiffs are entitled to adduce evidence in support of their claims just as the defendants are entitled to offer evidence that would defeat them. All or part of the administrative record might be introduced after appropriate consideration of the Federal Rules of Evidence, Fed.R.Evid.

803(8). Then the parties are entitled to the court's assessment of the facts, its evaluation of the credibility of witnesses and its application of a judicial standard of nondiscrimination, to be determined by it.[24] The judicial appraisal of the plaintiffs' claim cannot properly be limited to review of the administrative record and the application of a restricted standard of review, relying on regulations which, though they were effective as of the date of the agency action, no longer reflect the agency's own view of the standard of nondiscrimination required under the statute.[25] Because review is not limited to the administrative record, such discovery as would normally be allowed should be permitted.

We note in regard to the standard of nondiscrimination under Section 504 that on appeal "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488 (1974), *quoted in Cort v. Ash*, 422 U.S. 66, 77, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26, 35 (1975). Logically, if an appellate court must apply the administrative regulations in effect at the time it renders its decision, *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474, 484 (1969), the district court on remand after appeal should consider the new DOT

**24.** A "court cannot be expected to utilize its discretion in the same manner as an agency charged with the broad administration of the statute." Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285, 292 (1963). While the DOT and HEW might be content to defer the effective date of their regulations mandating full accessibility of transit buses acquired with federal financial assistance, the court is free to determine for itself within the context of the implied cause of action, whether the acquisition of buses inaccessible to the plaintiffs violated the nondiscrimination standard imposed by Section 504 of the Rehabilitation Act of 1973.

**25.** The type of judicial review of agency action under the APA conducted by the district court is more properly seen as the last step in *administrative* enforcement of Section 504 which is "contradistinct from an independent cause of

action in federal court...." *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277, 1286. *See* Wolff, Protecting the Disabled Minority: Rights and Remedies under Sections 503 and 504 of the Rehabilitation Act of 1973, 22 St. Louis U.L.J. 25 (1978). *See generally*, note, Private Rights of Action for Handicapped Persons Under Section 503 of the Rehabilitation Act, 13 Val.U.L.Rev. 453 (1979). Indeed, in *Camenisch v. University of Texas*, 616 F.2d 127 (5th Cir. 1980), we determined "that the administrative procedures under the Rehabilitation Act are not appropriate to private individual suits to enforce Section 504 in the courts. Therefore, Camenisch's court claim [stood] by itself," 616 F.2d at 131 n.5, because the administrative procedures "do not provide the most appropriate or exclusive remedy to vindicate personal Section 504 rights." 616 F.2d at 134.

regulations absent statutory direction or legislative history to the contrary. Supplemental information accompanying the DOT's new Section 504 regulation indicates that the 1979 regulation might properly be considered by the district court in its review of the Section 504 claims in this case.[26] Therefore, the regulatory provisions promulgated by the DOT in compliance with the presidential directive to implement section 504, 44 Fed.Reg. 31,442 et seq. (1979) (to be codified in 49 C.F.R. Part 27), may be considered by the district court in its determination of the appropriate standard of nondiscrimination mandated by Section 504. Upon remand, the district court should not limit its analysis to the 1976 UMTA regulations, but should also consider the 1979 DOT regulations promulgated under Section 504.

If the court limits its consideration of the implied cause of action in Section 504 to a review of the administrative record under the strictures of the "arbitrary and capricious" standard of review of agency action specified by the APA, the effectuation of the policies behind the implication of the private cause of action will be diminished, if not defeated completely. The less rigorous standard of judicial review under the APA adds little to the enforcement potential of the administrative agency itself. It does not afford the plaintiff the same degree of direct relief as would a de novo review upon a record compiled by the district court. Moreover, the plaintiff has less control over the court's review under the APA if he is not allowed to present his own evidence to the court.

Such limited review of the evidence in an action under Section 504 was rejected as unduly restrictive in *Leary v. Crapsey*, 566

F.2d 863 (2d Cir. 1977). Similarly, in *United Handicapped Federation v. Andre*, 558 F.2d 413 (8th Cir. 1977), the Eighth Circuit remanded for a consideration of the affirmative duties created by Section 504 and enforceable by a private cause of action in light of newly promulgated regulations with no indication that the district court's reappraisal of the Section 504 claim was to be confined by the strictures of the APA standard of review. *See also Snowden v. Birmingham–Jefferson County Transit Authority*, 407 F.Supp. 394 (N.D.Ala.1975), *aff'd summarily*, 551 F.2d 862 (5th Cir. 1977), which was resolved by summary judgment but only after a full review of evidence submitted and testimony taken from the parties.[27]

IV.

We, therefore, affirm the summary judgment as to the UMT Act claims and remand for further proceedings the plaintiffs' implied cause of action under Section 504. We express no opinion concerning whether, upon the completion of discovery, there will be genuine issues of material fact requiring a trial on the merits of the cause of action implied in Section 504 or whether the material facts will be so pellucid as to permit summary judgment.

Our disposition of the claims under the Rehabilitation Act makes it unnecessary for us to examine fully the plaintiffs' claims against the local government defendants under the fourteenth amendment and 42 U.S.C. § 1983. These are of course to be evaluated on the basis that they are independent judicial claims. Our decision also does not address the plaintiffs' claim for attorney's fees under 42 U.S.C. § 1988.

---

26. "While DOT does not intend for this rule to apply retroactively, requirements which become effective on the effective date of this regulation, e. g., certain new construction or the issuance of solicitations for certain new vehicles, will be subject to this rule even if the construction or vehicles were part of a project or contract approved before the effective date of this part." 44 Fed.Reg. 31,444 (1979).

27. *See N.A.A.C.P. v. Wilmington Medical Center, Inc.*, 453 F.Supp. 280 (D.Del.1978), *rev'd,*

N.A.A.C.P. v. Medical Center, Inc., 599 F.2d 1247 (3d Cir. 1979); *Michigan Paralyzed Veterans of America v. Coleman*, 451 F.Supp. 7 (E.D. Mich.1977); *Bartels v. Biernat*, 427 F.Supp. 226 (E.D.Wis. 1977). *But see Vanko v. Finley*, 440 F.Supp. 656 (N.D. Ohio 1977) (expressly adopting the APA standard of review, yet not limiting review to the administrative record and passing on motions for summary judgment only after compiling a record).

That claim should properly await the district court's determination of the merits upon remand. *See Falcon v. General Telephone Co. of the Southwest*, 626 F.2d 369 (5th Cir. 1980); *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980).

For these reasons, the judgment is AFFIRMED as to the UMT Act claims and, as to the Section 504 claims, the case is REMANDED for further proceedings consistent with this opinion.