Michael COUSINS, Plaintiff, Appellant,

v.

SECRETARY OF the UNITED STATES DEPARTMENT OF TRANSPORTATION, Defendant, Appellee.

No. 88–1106.

United States Court of Appeals,
First Circuit.

Heard June 7, 1988.

Decided Sept. 20, 1988.

Harold L. Lichten with whom Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, Mass., Marc P. Charmatz and

Sarah S. Geer, Nat. Ass'n of the Deaf Legal Defense Fund, and Sy DuBow and E. Elaine Gardner, Nat. Center for Law and the Deaf, Washington, D.C., were on brief, for plaintiff, appellant.

Robert K. Rasmussen, Appellate Staff, Civ. Div., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., Washington, D.C., Robert S. Mueller, III, Deputy U.S. Atty., Boston, Mass., and Michael Jay Singer, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., were on brief, for defendant, appellee.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

This appeal raises the question of whether there is a private right of action under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, against the federal government acting in its regulatory capacity.[1] Plaintiff-appellant, Michael Cousins, is a deaf man who was unable to obtain employment in Maine as a tractor-trailer driver because a regulation promulgated by the United States Department of Transportation (DOT) effectively prohibits deaf persons from driving motor carriers in inter-state commerce, regardless of their ability to perform such duties. *See* 49 C.F.R. § 391.41(b)(11) (1987).[2] Plaintiff challenged this regulation in the United States District Court for the District of Maine by bringing suit under section 504 against Elizabeth Dole in her official capacity as the Secretary of DOT. He alleged that, by promulating and threatening to enforce the regulation against him, defendant caused him to be denied employment as a commercial truck driver.[3] The district court found that the plaintiff had no private right of action against DOT under section 504, and accordingly, dismissed the complaint without prejudice to the filing of an amended complaint stating a claim for relief under the Administrative Procedure Act. *See Cousins v. Dole*, 674 F.Supp. 360 (D.Me. 1987). Plaintiff appealed.[4]

## I.

Our analysis is controlled and therefore simplified by *Traynor v. Turnage*, —— U.S. ——, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), in which the Supreme Court rested its holding on the assumption that there is a private right of action under section 504 of the Rehabilitation Act against the federal

---

1. Section 504 provides in relevant part that [n]o otherwise qualified handicapped individual in the United States, ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
29 U.S.C. § 794 (1982). By issuing regulations, the federal government is "conducting a program or activity." Because this case raises a challenge to a federal regulation, we describe the action against the federal government as a challenge to the government "acting in its regulatory capacity." We do not mean to imply that such a challenge is different from one directed at the "conduct" of a federal program. We simply prefer to use a phrase describing precisely the nature of the federal activity claimed by the plaintiff to be discriminatory.

2. The regulation provides in relevant part that "[a] person is physically qualified to drive a motor vehicle if that person

[f]irst perceives a forced whispered voice in the better ear at not less than 5 feet with or without the use of a hearing aid or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1000 Hz, and 2000 Hz with or without a hearing aid when the audiometric device is calibrated to American National Standard...."
49 C.F.R. § 391.41(b)(11) (1987).

3. On or about June 17, 1986, a representative of DOT advised the plaintiff's attorney that the regulation would be enforced against the plaintiff even if he were "engaged in the intrastate portion of interstate movements of property." Therefore, the plaintiff could not obtain employment by confining his driving to within the state of Maine.

4. The plaintiff also alleged that defendant violated the due process clause of the fifth amendment by depriving him of valuable property rights without an opportunity for a hearing. The district court found "that the existence of an effective and substantial statutory remedy in the Administrative Procedure Act obviate[d] the need to imply a constitutional remedy" under the fifth amendment. *Cousins v. Dole*, 674 F.Supp. 360, 363 (D.Me.1987). Plaintiff does not appeal this holding.

government acting in its regulatory capacity. A procedural exegesis of *Traynor* is necessary.

*Traynor* was a consolidation of cases from different circuits challenging the same regulation issued by the Veterans' Administration (VA). Veterans Traynor and McKelvey were recovered alcoholics who sought veterans' educational assistance benefits under the G.I. Bill. *See* 38 U.S.C. § 1661. Although these benefits generally must be used within ten years following discharge or release from active duty, veterans may obtain an extension beyond this ten-year period, if they were prevented from using their benefits earlier by "a physical or mental disability which was not the result of [their] own willful misconduct...." 38 U.S.C. § 1662(a)(1). Traynor and McKelvey claimed an extension under this provision on the ground that they had been disabled by alcoholism during much of the ten-year period. The VA rejected their position, relying on that part of the challenged regulation which characterizes a disability resulting from "the drinking of a beverage to enjoy its intoxicating effects" as "willful misconduct." *See* 38 C.F.R. § 3.301(c)(2).

Traynor sought review of the VA decision in the United States District Court for the Southern District of New York, and McKelvey, in the United States District Court for the District of Columbia. Both claimed that the VA's refusal to extend them benefits, a decision made pursuant to the challenged regulation, violated their right under section 504 not to be discriminated against solely on the basis of a handicap, in their case, alcoholism. The district courts agreed. *See Traynor v. Walters*, 606 F.Supp. 391 (S.D.N.Y.1985); *McKelvey v. Walters*, 596 F.Supp. 1317 (D.D.C.1984).

On appeal, the Second Circuit reversed the decision in favor of Traynor on the ground that a separate provision of the Veterans' Benefits statute, 38 U.S.C. § 211(a),[5] barred review of the section 504 claim. *See Traynor v. Walters*, 791 F.2d 226 (2d Cir.1986). The District of Columbia Circuit disagreed, but reversed the decision in favor of McKelvey on the merits. *See McKelvey v. Turnage*, 792 F.2d 194 (D.C. Cir.1986). The Supreme Court granted certiorari "to decide whether the Veterans' Administration's decision is subject to judicial review and, if so, whether that decision violates § 504 of the Rehabilitation Act of 1973, 87 Stat. 394, 29 U.S.C. § 794, which requires that federal programs not discriminate against handicapped individuals solely because of their handicap." *Traynor*, 108 S.Ct. at 1376.

The Court concluded that the question of "whether a [VA] regulation violate[d] the Rehabilitation Act is not foreclosed from judicial review by § 211(a)[,]" *id.* at 1380, but that the regulation in question did not violate the Act. *Id.* at 1380–84. In spite of the Court's explicit reference to the Rehabilitation Act, defendant-appellee argues that it is unclear from *Traynor* whether the petitioners' claims arose directly under the Rehabilitation Act, or under the Administrative Procedure Act (APA). Specifically, defendant suggests that the Supreme Court might have been assessing the validity of the veterans' benefit regulation under the APA provision which provides that agency action must be set aside if it is "arbitrary, capricious, ... or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We think that defendant's argument defies the plain meaning of the Supreme Court's decision.

At no point in *Traynor* did the Court mention the APA. Its only reference to the type of claim that *might* be brought pursuant to the APA appears implicitly in its discussion of whether section 211(a) barred judicial review of the section 504 claim. The Court stated:

5. Section 211(a) provides in relevant part:
   [T]he decisions of the [VA] Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.
   38 U.S.C. § 211(a).

[T]he cases now before us involve the issue whether the law sought to be administered is valid in light of a subsequent statute whose enforcement is not the exclusive domain of the Veterans' Administration. *There is no claim that the regulation at issue is inconsistent with the statute under which it was issued.*

.   .   .   .   .

*Traynor,* 108 S.Ct. at 1379 (footnote omitted) (emphasis added).

In fact, a claim that the regulation was "inconsistent with the statute under which it was issued" had been advanced and rejected in one of the courts below. In *McKelvey v. Walters,* 596 F.Supp. 1317, the district court described the issue "presented for determination" as

> whether the regulation [was] arbitrary, irrational and exceed[ed] the agency's statutory authority by denying lawful benefits to veterans who suffer from alcoholism. The plaintiff's challenge arises under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and the due process and equal protection prongs of the Fifth Amendment. The plaintiff's challenge also calls for consideration of his claim that in denying his request for relief, his rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination against alcoholics, were violated.

596 F.Supp. at 1319. The district court rejected the APA claim because it found that the challenged regulation did not "contravene any implicit or explicit congressional intent" reflected in the statutory provision allowing an extension of the ten-year delimiting period for those veterans prevented from using their benefits by a disability not the result of their own "willful misconduct." *Id.* at 1321. In contrast, the court found that the regulation did violate section 504. Only the claim arising under section 504 was appealed. *See McKelvey v. Turnage,* 792 F.2d 194.

In *Traynor v. Walters,* the district court considered whether the regulation violated "the nondiscrimination provisions of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701–794, and the fifth amendment." 606 F.Supp. at 393. Although the court found that the "regulations challenged herein with[stood] constitutional scrutiny, [it also found that] they violate[d] § 504 of the Rehabilitation Act, 29 U.S.C. § 794." *Id.* at 401.[6] It based its conclusion on a finding that the VA policy "contravene[d] the Rehabilitation Act by discriminating against those rehabilitated alcoholics (a remarkable accomplishment) most deserving of aid." *Id.* Only the claim arising under section 504 was appealed. *See Traynor v. Walters,* 791 F.2d 226.

The issue before the Supreme Court therefore was whether the regulation characterizing alcoholism as "willful misconduct" violated section 504 of the Rehabilitation Act of 1973. The question of whether the regulation *also* violated the APA mandate that agency action not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), was *not* before the Court. Had it been, the Court would have said so. Moreover, it would have referred to the standard of review applicable under 5 U.S.C. § 706(2)(A). In defining this standard, known as the "arbitrary and capricious" standard, the Supreme Court has directed that a reviewing court must " 'consider whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974)). *See also Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–17, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). This standard of review is a "narrow" one, requiring that a court not "substitute its judgment for that

---

**6.** The district court used the term "regulations" because it assessed not only the regulation eventually challenged before the Supreme Court, *see* 38 C.F.R. § 3.301(c)(2), but also the regulation setting forth definitions of "willful misconduct." *See* 38 C.F.R. § 3.1(n).

of the agency," *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866. If, therefore, the Court in *Traynor* had been reviewing the petitioners' claim under the APA, it would have conducted a limited inquiry to assess whether the VA had advanced a " 'rational connection between the facts found [about alcoholism] and the choice made [to characterize alcoholism as "willful misconduct"].' " *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866–67 (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)).[7]

The Court did not approach the issue before it as one implicating the APA. Rather, it reasoned that the same Congress which in 1977 "created an exception to th[e] 10–year delimiting period for veterans who delayed their education because of 'a physical or mental disability which was not the result of [their] own willful misconduct,' " *Traynor,* 108 S.Ct. at 1380 (quoting 38 U.S.C. § 1662(a)(1)), also, one year later, "extended § 504's prohibition against discrimination on the basis of handicap to 'any program or activity conducted by any Executive agency.' " *Id.* 108 S.Ct. at 1381 (quoting 29 U.S.C. § 794). Accordingly, the Court held that the "petitioners can prevail under their Rehabilitation Act claim only if the 1978 legislation can be deemed to have implicitly repealed the 'willful misconduct' provision of the 1977 legislation or forbade the Veterans' Administration to classify primary alcoholism as willful misconduct." *Id.*[8] The Court concluded that there was no implicit repeal: the "1978 legislation [would not be] rendered meaningless, even with respect to those who

claim to have been handicapped as a result of alcoholism, if the 'willfull misconduct' provision of § 1662(a)(1) [were] allowed to retain the import originally intended by Congress." *Id.* at 1381–1382. Construing this "original import" to mean that the alcoholism from which the petitioners had recovered was "willful misconduct," *id.* at 1380–81, the Court upheld the challenged regulation.

## II.

We have detailed the decision in *Traynor* in order to make clear that the Supreme Court rested its holding in that case on the assumption that a private action could be maintained under section 504 of the Rehabilitation Act of 1973 against the federal government acting in its regulatory capacity. To explicate the basis for this assumption, we turn to an assessment of the Rehabilitation Act in light of the Supreme Court's teachings on implied causes of action.

In its most recent case, the Supreme Court held that

[i]n determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute.... Congress' "intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment."

*Thompson v. Thompson,* —— U.S. ——, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979)). *See Transamerica,* 444 U.S. at 15–16, 100 S.Ct.

---

**7.** Defendant asserts that the standard of review under section 504 of the Rehabilitation Act of 1973 and 5 U.S.C. § 706(2)(A) is the same. It claims that the phrase in 5 U.S.C. § 706(2)(A) precluding agency action not "otherwise in accordance with law," incorporates by reference *all* laws (including the Rehabilitation Act) and not just the law of the enabling statute itself. We express no opinion on this interpretation of 5 U.S.C. § 706(2)(A). It suffices to say that the interpretation is a novel one that has been rejected by at least two circuits. *See Davidson v. U.S. Dep't of Energy,* 838 F.2d 850 (6th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988); *Cleghorn v. Herrington,* 813 F.2d 992 (9th Cir.1987). Therefore, it seems

very unlikely that the Supreme Court in *Traynor* used this interpretation without even mentioning it, as the basis for a holding on the meaning of the Rehabilitation Act.

**8.** The Court used the term "primary alcoholism," as did the VA, to distinguish it from alcoholism that is " 'secondary to and a manifestation of an acquired psychiatric disorder.' " *Traynor,* 108 S.Ct. at 1376 n. 2 (quoting Administrator's Decision, Veterans' Administration No. 988, Interpretation of the Term "Willful Misconduct" as Related to the Residuals of Chronic Alcoholism, Aug. 13, 1964).

at 244–45 ("what must ultimately be determined is whether Congress intended to create the private remedy asserted"). But the Court also warned that the "implied cause of action doctrine would be a virtual dead letter were it limited to correcting drafting errors when Congress simply forgot to codify its evident intention to provide a cause of action." *Thompson*, 108 S.Ct. at 516. Therefore, the Court directed, there must be an initial examination of "the context of the [statute] with an eye toward determining Congress' perception of the law that it was shaping or reshaping." *Id.* (citations omitted).

There can be no doubt that in 1974, when Congress first amended the Rehabilitation Act of 1973, it intended that there be a private remedy under section 504. At that time, section 504 read as follows:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794. The Senate Report discussing the 1974 amendments (none of which are relevant here) noted that section 504

> was patterned after, and is almost identical to, the anti-discrimination language of section 601 of the Civil Rights Act of 1964 ... and section 901 of the Education Amendments of 1972.... [It] envisions the implementation of a compliance program which is similar to those Acts, including promulgation of regulations providing for investigation and review of recipients of Federal financial assistance, attempts to bring non-complying recipients into voluntary compliance through informal efforts such as negotiation, and the imposition of sanctions against recipients who continue to discriminate.... Such sanctions would include, where appropriate, the termination of Federal financial assistance to the recipient or other means authorized by law.... This approach ... would ...

> *permit a judicial remedy through a private action.*

S.Rep. No. 1297, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 6373, 6390–91 (emphasis added). In reliance on this language, a number of federal courts found an implied cause of action under section 504. *See, e.g., Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977); *Lloyd v. Regional Transp. Auth.*, 548 F.2d 1277 (7th Cir.1977); *see also Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1377–78 (10th Cir.1981) (listing cases).

In 1978, Congress amended the Act in two ways relevant to our inquiry. At the end of section 504, it added the phrase: "or under any program or activity conducted by any Executive Agency or by the United States Postal Service." It also added a completely new section, section 505, which provided in relevant part:

> (a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. § 2000e–5(f) through (k)), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint.

> (2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

> (b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

29 U.S.C. § 794a.

Two questions are raised by the 1978 amendment. First, do the remedies specified in section 505(a)(1) and (2) allow for

claims against an executive agency when it conducts a "program or activity"? In other words, do the remedies allow for private actions against the federal government when it acts, as it did in the case at bar, in its regulatory capacity? Second, if not, are these remedies exclusive, *i.e.*, is an action against the federal government in its regulatory capacity confined to the remedies available under the APA?

The district court found that the plaintiff's challenge to the DOT could be brought pursuant to section 505(a)(2) *and* that the remedy under that section was limited to the APA. As mandated by section 505(a)(2), the court looked to the remedies "set forth" in Title VI of the Civil Rights Act of 1964, specifically to those in section 603 of the Act. That section, which is the only one to "set forth" any remedies at all, provides that

> [a]ny department or agency action taken pursuant to section 2000d–1 of this title shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds. In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 2000d–1 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action in accordance with chapter 7 of Title 5, and such action shall not be deemed committed to unreviewable agency discretion within the meaning of that chapter.

42 U.S.C. § 2000d–2.

The district court correctly concluded from the second sentence in the quoted provision that a "recipient of federal funds may obtain review of an agency decision denying or terminating grant funding...." *Cousins*, 674 F.Supp. at 364. But the court misread the first sentence by inferring from it that a person aggrieved by agency action when that agency acts in its regulatory capacity must confine his or her challenge to a remedy under the APA. *Id.* The first sentence makes no such pronouncement. Rather, it requires that agency action "taken *pursuant to section 2000–1* " be subject to judicial review "as may otherwise be provided by law." Section 2000d–1, in turn, provides that federal agencies granting financial assistance to recipients may effect compliance with the antidiscrimination mandate of Title VI by issuing rules and regulations and by terminating or refusing to grant or continue assistance to any recipient failing to comply with that mandate. *See* 42 U.S.C. § 2000d–1.[9] It is an agency's action or inaction in effecting compliance with Title VI *through its control over a recipient's funding* that makes it subject to such judicial review "as may otherwise be provided by law." On its face, then, Title VI provides an avenue for challenging agency action only when that agency acts as a *provider* of federal funds. And section 505(a)(2), which refers to the "remedies, procedures, and rights *set forth* in title VI," 29 U.S.C. § 794a(a)(2) (emphasis added), reinforces this conclusion by stating that such remedies, procedures and rights are "available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal *provider* of such assistance...." *Id.* (emphasis added).

The question remains whether the remedies set forth in section 505 are exclusive. The defendant argues that they are,

---

**9.** This section, which is section 602 under Title VI of the Civil Rights Act of 1964, provides in relevant part:

> Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, ... is authorized and directed to effectuate the provisions of ... this title ... by issuing rules, regulations, or orders.... Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement ..., or (2) by any other means authorized by law....

42 U.S.C. § 2000d–1.

claiming that Congress' mere act of adding them in 1978 showed congressional intent to make them the exclusive remedies under the Act, at least for plaintiffs pursuing actions against the federal government. The legislative history, the defendant concludes, "is devoid of any implication that Congress wished to provide a cause of action against a federal agency when it issues general safety regulations."

We do not agree. The short and conclusive answer rejecting the defendant's argument comes from the Senate Committee Report on the 1978 legislation. In that report, the Committee stated that

> the rights extended to handicapped individuals under title V ... are, and will remain, in need of constant vigilance, by handicapped individuals to assure compliance, and the availability of attorney's fees should assist in vindicating private rights of action in the case of section 502 and 503 cases, as well as those arising under section 501 and 504.

S.Rep. No. 890, 95th Cong., 2d Sess. 19 (1978), U.S.Code Cong. & Admin.News pp. 7312, 7330. This language, we think, conclusively shows Congress' continued intent—even after amending the statute to include section 505—to allow private rights of action under the Act.

Moreover, the "fact that other provisions of a complex statutory scheme create express remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under a separate section." *Cannon v. Univ. of Chicago,* 441 U.S. 677, 711, 99 S.Ct. 1946, 1965, 60 L.Ed.2d 560 (1979) (citations omitted).

Section 505 provides two express remedies. The first, in section 505(a)(1), states that the "remedies, procedures, and rights" set forth in Title VII of the Civil Rights Act of 1964 are available "with respect to any complaint brought under section 791 of this title." 29 U.S.C. § 794a(a)(1). Section 791, in turn, applies to action by the federal government in its capacity as an employer. The second remedy, in section 505(a)(2), states that the "remedies, procedures, and rights" set forth in Title VI of the Civil Rights Act of 1964 are available to "any person aggrieved" under section 794. 29 U.S.C. § 794a(a)(2). As discussed above, *see supra* at 43–44, section 505(a)(2) applies to action by the federal government in its capacity as a provider of federal funds.

Both sections, by referring to Titles VII and VI, make available to handicapped plaintiffs the administrative procedures available under those laws. For example, under section 505(a)(1), a plaintiff seeking to file an action against a federal employer must, before attempting judicial review, first file his or her complaint with the Equal Employment Opportunity Commission (Title VII procedure). Similarly, under section 505(a)(2), a plaintiff seeking to file an action against a recipient of federal funds may attempt to resolve his or her complaint by filing it with the federal provider.[10] If the provider does not take action against the recipient, then the aggrieved person can pursue his or her complaint through judicial review (Title VI procedure).[11] Neither of these remedies is so

---

**10.** As the Supreme Court recently held, the legislative history of section 505(a)(2) reveals that Congress enacted the section to make clear that handicapped individuals could use the procedures of Title VI for filing complaints. *See Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 635, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984) (section 505(a)(2) "was intended to codify the regulations of the Department of Health, Education, and Welfare governing enforcement of § 504"). These procedures had already been expressly incorporated by reference in regulations governing enforcement of section 504. *See* 45 C.F.R. § 84.61 (1987). It is undisputed that a plaintiff may also pursue an action against the recipient directly under section 504.

*See Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984).

**11.** It is unclear from section 505(a)(2) whether a plaintiff who claims that a federal provider is not taking sufficient enforcement action against a discriminatory recipient *must* pursue his or her action through the APA, or may, additionally, claim against the provider directly under section 504. We refrain from issuing a definitive ruling on this matter, and simply note the different approaches among the circuits. *Compare Baker v. Bell,* 630 F.2d 1046, 1055–57 (5th Cir.1980) (finding private cause of action against provider directly under section 504) *with Marlow v. U.S. Dept. of Educ.,* 820 F.2d 581

comprehensive as to indicate a congressional intent to foreclose alternate avenues of relief. *Cf. Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."). Placing them within " 'the structure of the statute,' " *Thompson,* 108 S.Ct. at 516 (quoting *Transamerica,* 444 U.S. at 18, 100 S.Ct. at 246), they are quite similar to the administrative enforcement procedures that were available under Title IX when the Supreme Court found an additional remedy of a private cause of action under that statute. *See Cannon,* 441 U.S. 677, 99 S.Ct. at 1946.[12]

Furthermore, like the private action found implicit in Title IX, a private action under section 504 against the federal government acting in its regulatory capacity would promote the underlying legislative scheme. The purpose of section 504, like that of the two statutes from which its language is drawn (Title VI and Title IX) is to "avoid the use of federal resources to support discriminatory practices ... [and] provide individual citizens effective protection against those practices." *Id.* at 704, 99 S.Ct. at 1961. As stated repeatedly by the Court, the primary goal of the Rehabilitation Act is to enhance the employment rights of those who are, or are perceived to be, handicapped. *See Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 633 n. 13, 104 S.Ct. 1248, 1253–54 n. 13, 79 L.Ed.2d 568 (1984); *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *see also Alexander v.*

*Choate,* 469 U.S. 287, 307 n. 28, 105 S.Ct. 712, 723 n. 28, 83 L.Ed.2d 661 (1985) (citing *Consolidated* ). Allowing individuals the opportunity to sue directly under section 504, not just when a recipient allegedly discriminates, but also when the federal government itself allegedly discriminates by issuing safety regulations which preclude the employment of the handicapped, "is not only sensible but is also fully consistent with ... orderly enforcement of the [Rehabilitation Act]." *Cannon,* 441 U.S. at 705–06, 99 S.Ct. at 1062 (footnote omitted).

In another attempt to prevail on its claim that the plaintiff is limited to review under the APA, the defendant relies on *N.A.A.C.P. v. Secretary of Housing & Urban Dev.,* 817 F.2d 149 (1st Cir.1987). It focuses on language in that decision in which we noted that "[o]ne would ordinarily expect ... that when Congress means to permit a private party to ask a court to review the legality of federal actions in a manner that differs from APA review, Congress will say so explicitly in the statute." 817 F.2d at 153 (citation omitted). Because there is no language in the Rehabilitation Act providing for actions against federal agencies acting in their regulatory capacity, defendant argues that we must as a matter of First Circuit law find that Congress meant to limit actions against such agencies to those provided by the APA.

Defendant reads too much into this holding. First, our decision in *N.A.A.C.P.* was controlled by our prior decision in *Latinos Unidos de Chelsea en Accion v. Secretary of Housing and Urban Dev.,* 799 F.2d 774, 791–93 (1st Cir.1986), in which we found that there was no private cause of action

(2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 780, 98 L.Ed.2d 866 (1988) (refusing to find private cause of action against provider directly under section 504); *Salvador v. Bennett,* 800 F.2d 97 (7th Cir.1986) (same).

**12.** Section 902 of the Title IX provides in relevant part:

Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity, ... is authorized and directed to effectuate the provisions ... of this title ... by issuing

rules, regulations, or orders.... Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement ..., or (2) by any other means authorized by law....

20 U.S.C. § 1682. *See supra* note 9 for a comparison of the language above with that of section 602 of Title VI.

under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–3631. The plaintiff in *N.A.A.C.P.* also sought a private remedy under Title VIII, and in reliance upon *Latinos*, we simply rejected the claim.

Second, we noted in *N.A.A.C.P.* that there might be "a few instances in which a court might, notwithstanding the APA, wonder whether Congress meant to create a private right of action against the federal government." 817 F.2d at 153. Because the APA does not award attorney's fees, one of these instances is when a statute provides for such fees. Then, we said, a court "might ... have to decide ... whether the action arises under the *particular* act or whether it is simply a general APA-based request for judicial review." *Id.* (emphasis in original) (citing *Cannon*, 441 U.S. at 699–700, 99 S.Ct. at 1958–59, for proposition that explicit authorization of attorney's fee award against the federal government in certain actions to enforce Title VI is support for conclusion that Title VI confers private right of action) (other citation omitted).

The Rehabilitation Act falls squarely within the exception put forward in *N.A.A. C.P.* For, in addition to setting forth the express remedies discussed above, section 505 also allows attorney's fees to the prevailing party "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter...." 29 U.S.C. § 794a(b). The defendant argues, and the court below held, that this provision applies only to the two express remedies contained in the same section. *See Cousins*, 674 F.Supp. at 364 n. 9. But the language of the provision itself belies such an interpretation: it provides attorney's fees for any action to enforce a violation of "this subchapter." "Subchapter" refers to subchapter V, which extends from 29 U.S.C. § 790 through 29 U.S.C. § 794a. Had Congress sought to limit the attorney's fees provision to the remedies contained only in section 505, 29 U.S.C. § 794a, it would have said so. *See also supra* at 43 (setting forth the Senate Report discussing the attorney's fee provision in the 1978 amendment).

*Traynor v. Turnage,* —— U.S. ——, 108 S.Ct. 1372, other Supreme Court teachings, and the legislative history of the statute mandate a holding that section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982) carries with it a private right of action against the federal government acting in its regulatory capacity.

*Case remanded for a trial on the merits.*

Costs on appeal awarded to appellant.