John DOE, Plaintiff,

v.

ATTORNEY GENERAL OF the UNITED STATES, et al., Defendants.

No. C–88–3820–CAL.

United States District Court, N.D. California.

Aug. 25, 1989.

---

Kirke M. Hasson, Christopher L. Byers, Pillsbury, Madison & Sutro, Matthew A. Coles, Jo Anne Frankfurt, American Civ. Liberties Union Foundation of Northern Cal., Inc., Employment Law Center, A Project of the Legal Aid Soc. of San Francisco, San Francisco, Cal., for plaintiff.

Joseph P. Russoniello, U.S. Atty., Sandra Willis, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## OPINION

LEGGE, District Judge.

This case was tried to the court, sitting without a jury, and was submitted to the court for decision. The court has heard and reviewed the testimony of the witnesses, and has reviewed the exhibits admitted into evidence, the record of the case, the briefs filed by the parties, the arguments of counsel, and the applicable authorities. This opinion constitutes the court's findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

### I.

The complaint asserts two claims. The first is under 29 U.S.C. § 794, a part of the Rehabilitation Act. The cases interpreting 29 U.S.C. § 794 generally refer to it by its public law section number, section 504; for purposes of consistency so will this opinion.

Plaintiff also alleges that the defendants' use of private information about him was a violation of his privacy rights under the due process clause of the Fifth Amendment to the United States Constitution. Plaintiff dismissed his claim for damages under the constitutional claim, so the only relief requested under that count is equitable relief.

This court has jurisdiction over the action by virtue of 28 U.S.C. § 1331 and § 1391(b).

### II.

Plaintiff is a medical doctor. He is engaged in the private practice of medicine as a doctor employed by, and the director of, a health care facility. The health care facility is controlled by a hospital.[1] Plaintiff receives a salary from the facility, and his earnings are in part based upon the earnings of the facility from the patients whom plaintiff treats.

From approximately December 1984 to August 1988, defendants sent all persons who were applicants for employment by the Federal Bureau of Investigation to the facility for pre-employment physical examinations, and they sent all employees of the Bureau to the facility for annual and promotion physical examinations. Defendants paid the facility a fee for each of the examinations. Virtually all of those physical examinations were conducted by plaintiff.

Plaintiff has contracted acquired immune deficiency syndrome ("AIDS"). On or about August 15, 1988, someone advised the Bureau that plaintiff had Kaposi's Sarcoma, an AIDS-related illness. Defendants attempted to verify the information and the risks which might exist from plaintiff's performing the physical examinations of the Bureau's employees and applicants. Plaintiff, the facility, and the hospital did not directly confirm to defendants that plaintiff had AIDS. They instead informed defendants that there was no medical risk from Dr. Doe's performing the physicals, and they offered education on the appropriate medical standards. Defendants did not consider the responses of plaintiff, the facility, or the hospital to be adequate. On or about August 23, 1988, defendants ceased sending employees and applicants to the facility for physical examinations because of defendants' concern about plaintiff's illness.

Defendants did not resume sending employees and applicants to the facility until

1. For reasons of privacy, plaintiff is referred to as "Dr. Doe," the health care facility is called "the facility," and the hospital is called "the hospital."

after this court issued a preliminary injunction. Thereafter, defendants authorized three health care organizations, one of which is the facility, to do the physical examinations of the Bureau's employees and applicants. Since defendants began using that procedure, the facility has received fewer patients for physical examinations than it did prior to August 15, 1988.

## III.

█ The threshold issue is whether plaintiff has a private right of action in a United States District Court against these federal defendants under section 504. The section provides in pertinent part as follows:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

It is settled in this circuit that AIDS is a "handicap" under section 504. *Chalk v. United States District Court,* 840 F.2d 701 (9th Cir.1988); *Thomas v. Atascadero,* 662 F.Supp. 376 (C.D.Cal.1987). For purposes of this analysis, the court will also assume that plaintiff is an "otherwise qualified individual" within the meaning of section 504.[2]

More precisely, the question is whether such a plaintiff has a private right of action under section 504 in this court against a government agency and its officials who purchase services from plaintiff's employer.[3]

Neither the statute nor the legislative history answer the question. And in spite of an extensive volume of litigation under section 504 and related sections, no case directly answers the question.

The United States Supreme Court and the courts of this circuit recognize a private right of action under section 504 against the entity which is the recipient of federal funds. *School Board v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984); *Chalk v. United States District Court,* 840 F.2d 701 (9th Cir.1988); *Greater Los Angeles Council on Deafness v. Zolin,* 812 F.2d 1103 (9th Cir.1987); *Kling v. County of Los Angeles,* 633 F.2d 876 (9th Cir.1980); *Thomas v. Atascadero,* 662 F.Supp. 376 (C.D.Cal.1987). But those cases do not answer the question of whether there is a cause of action against the federal agency which provides the funds. In the present case, it is not the recipient of the funds which allegedly discriminated against plaintiff, but the federal agency itself.

█ A private right of action exists against a government agency by an *employee* of the agency, or an applicant for employment by the agency. *Johnston v. Horne,* 875 F.2d 1415 (9th Cir.1989); *Boyd v. U.S. Postal Service,* 752 F.2d 410 (9th Cir.1985); *Sisson v. Helms,* 751 F.2d 991 (9th Cir.), *cert. denied,* 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985). However, plaintiff here is not an employee of the federal agency. Nor does plaintiff claim that his status as an employee of the facility makes him an employee of the agency. And the right of an employee to sue a federal agency has most recently been limited to section 501, rather than section 504, of the Rehabilitation Act. *Johnston v. Horne,* 875 F.2d 1415, at 1420.

The Ninth Circuit in *Williams v. United States,* 704 F.2d 1162 (9th Cir.1983), re-

---

**2.** The issue of "otherwise qualified" was the subject of extensive evidence at trial, and factual findings on that issue would be necessary if there is a private right of action.

**3.** The evidence is clear that plaintiff suffered a direct loss of income from defendants' reduced use of the facility.

versed the grant of an injunction against a federal agency under section 504, but not on the issue of a private right of action; at 1163–4. The court said that the plaintiff classes and organizations had standing to assert their claims. It did not address the issue of a private right of action, and the suit was to compel the agency to issue regulations and was not one for damages.

Several cases have prohibited suits against federal agencies under the statute, albeit in situations not directly controlling the present case. In *Marlow v. U.S. Department of Education*, 820 F.2d 581 (2nd Cir.1987), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 780, 98 L.Ed.2d 866 (1988), a teacher was denied a cause of action against the Department of Education on review of an administrative finding. In *Salvadore v. Bennett*, 800 F.2d 97 (7th Cir.1986), a student was denied a cause of action against the Department of Education, but the decision turned on an analysis of Title VI and Title VII procedures. In *NAACP v. Medical Center*, 599 F.2d 1247 (3rd Cir.1979), a plaintiff class sued a medical center and government officials alleging that a planned relocation of the medical facility violated section 601 of Title VI and section 504 of the Rehabilitation Act. The Third Circuit held that plaintiffs had a private right of action against the medical center, as a recipient of federal funds, but did not have a private right of action against the federal agency itself. *Id.* at 1254–55 and n. 27 and 1258–59 and n. 49. In *Community Brotherhood of Lynn, Inc. v. Lynn Redevelopment Authority*, 523 F.Supp. 779 (D.Mass.1981), a cause of action based on Title VI was not permitted against federal defendants (at 780). Those cases involve some points of distinction with the present case. For example, Title VI cases are not directly controlling because of certain differences in the statutory provisions. However, the legislative history indicates that section 504 was patterned after, and is almost identical to, the antidiscrimination language of section 601 in Title VI. S.Rep. No. 93–1297, 93rd Cong., 2d Sess. 39–40, reprinted in 4 U.S.Code Cong. & Admin. News, pp. 6373, 6390 (1974). In addition, section 504 incorporates Title VI procedures as permissible remedies. The above cases as a whole do indicate a reluctance to permit private rights of action against federal agencies unless the congressional intention to do so is clear.

The most recent case is *Cousins v. Secretary of Transportation*, 880 F.2d 603 (1st Cir.1989). Initially, a panel of the First Circuit recognized a right of action against a government agency under section 504 with respect to its adoption of regulations. *Cousins v. Secretary of U.S. Department of Transportation*, 857 F.2d 37, 42–45 (1st Cir.1988). However, that decision was withdrawn, and after an *en banc* hearing the First Circuit affirmed the District Court's dismissal of the section 504 suit. 880 F.2d at 612. The court held that plaintiff's remedy is under the Administrative Procedures Act:

> ... nor is there any indication that it is meant to imply that plaintiff can sue federal agencies directly under § 504, rather than within the confines of the APA.

*Id.* at 607.

In sum, no case has held that a section 504 cause of action can be maintained against a federal agency by an employee of a supplier. And the cases brought against federal agencies cited above, interpreting at least analogous provisions, have ruled against such a cause of action.

The agency's regulations must also be considered. Section 504 required the promulgation of regulations, and required that the regulations be submitted to Congress and not take affect earlier than thirty days after they were submitted. The Department of Justice did so, and those regulations are now contained in 28 Code of Federal Regulations.

Part 41 of those regulations implements section 504 in so far as it applies to "any program or activity receiving Federal financial assistance." Section 41.3(e) defines "Federal financial assistance," and express-

ly states that it does *not* include procurement contracts. This definition states the agency's intent to preclude the application of section 504 to such a relationship as the one here between the agency and the facility which employs plaintiff.

Part 39 of the regulations enforces the portion of section 504 pertaining to "any program or activity conducted by" the federal agency. Section 39.130 of the regulations appears to prohibit the handicap discrimination which is alleged in this case; *see* 39.130(b)(3) and (b)(5). The latter section is particularly important, because it expressly applies to procurement contracts:

> The agency, in the selection of procurement contractors, may not use criteria that subject qualified handicapped persons to discrimination on the basis of handicap.

However, Part 39 does not provide for a civil right of action against the agency. The compliance procedures are set forth in section 39.170, and they are administrative remedies before the agency. Subsection (a) says that "this section applies to all allegations of discrimination on the basis of handicap in programs or activities conducted by the agency."

The editorial notes to this section of the regulations make it clear that the intent of the regulations is to provide for an *administrative* remedy, and not for a private right of action in court:

> "Section 39.170 establishes a detailed complaint processing and review procedure for resolving allegations of discrimination in violation of section 504 in the Department of Justice's programs and activities. *The 1978 amendments to section 504 failed to provide a specific statutory remedy for violations of sec-*

*tion 504 and federally conducted programs.* The amendment's legislative history suggesting parallelism between section 504 for federally conducted and federally assisted programs is unhelpful in this area because the fund determination mechanism used in section 504 federally assisted regulations depends on the legal relationship between a Federal funding agency and the recipients to which the Federal funding is extended. The Department has decided that the most effective and appropriate *manner in which to enforce section 504 in the federally conducted area is through an equitable complaint resolution process.* Section 39.170 establishes this process."

28 C.F.R. § 39.170 Editorial Note at 402 (1988) (emphasis added).

■ It is thus clear from the regulations, which were submitted to Congress before they became effective, that section 504 does not give plaintiff a private right of action against the agency under "any program or activity receiving Federal financial assistance," because they do not include procurement arrangements. And plaintiff's remedy for a section 504 violation under "any program or activity conducted by" the agency is limited to administrative remedies.[4]

■ The court therefore concludes that plaintiff does not have a private right of action against these defendants under section 504, and he must pursue his administrative remedies before the Department of Justice.[5]

### IV.

Plaintiff's second claim is an alleged violation of his right of privacy under the due process clause of the Fifth Amendment to the Constitution. Plaintiff's claim in this

---

4. The court recognizes that at the time of granting plaintiff a preliminary injunction it did not believe that plaintiff was limited to his administrative remedies. However, after now having the opportunity to review the statutory, regulatory, and case history in detail, the court believes that its conclusion on the motion for preliminary injunction was incorrect.

5. For purposes of the period of limitations defined in 28 C.F.R. 39.170(d)(3), the court deems the complaint to have been filed on the date the complaint in this action was served on defendants.

regard is twofold: that defendants disclosed plaintiff's medical information to others, and that defendants used the medical information in the decisions which they made. Plaintiff seeks only injunctive relief on this claim.

■ The court finds and concludes that defendants did not violate plaintiff's right to privacy. Defendants' actions were in the exercise of their legitimate governmental responsibilities, and were reasonable under the circumstances with the information known to them at that time.

Because defendants compel their employees and applicants to get physical examinations, and directed all of those employees and applicants to the facility, defendants had a duty to be concerned for the health of their employees and applicants. Even though defendants' concerns may have been dispelled by better medical information, defendants' steps at the time were reasonable ones, in supposed protection of their employees and applicants and of their own potential liability. This was particularly true since neither plaintiff, the facility, nor the hospital made full disclosures to defendants about the nature and extent of plaintiff's disability, but instead simply assured defendants that there was no medical risk and offered further general education.

When defendants learned the information about plaintiff, they were concerned about plaintiff's privacy interests and took affirmative steps to assure his privacy, even at the risk of incurring the later displeasure of their employees. Defendants first discussed their information with the clinical director of the facility. That was an appropriate step, because the clinical director was defendants' contact with the facility. Further discussions within the facility and the hospital were initiated by the clinical director and by plaintiff. Defendants made no other disclosures of the information about plaintiff, other than to those within the Bureau and the Department of Justice who were involved in the decision making process (that is, had a "need to know"). Defendants also sought legal and medical advice within the Department of Justice. The matter first received public attention when this lawsuit was filed, and the public press printed stories about it.

While defendants' concerns about the risk to their applicants and employees may now be medically unfounded, defendants had the obligation to obtain additional information and take appropriate steps based upon the information which was known to them at that time. The use of the information about plaintiff, and the limited disclosures that were made by defendants, were legitimate exercises of governmental responsibilities which outweigh plaintiff's interest in the privacy of the information. *See Detroit Edison Co. v. NLRB*, 440 U.S. 301, 313–17, 99 S.Ct. 1123, 1129–32, 59 L.Ed.2d 333 (1979); *United States v. Westinghouse Electric Corporation*, 638 F.2d 570, 578 (3rd Cir.1980).

The court therefore concludes that plaintiff has not demonstrated an invasion of plaintiff's constitutionally protected privacy interests.

## V.

IT IS THEREFORE ORDERED that judgment be entered in favor of defendants and against plaintiff.